M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**Emery | Reddy, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Marc H. Edelson*
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Phone: (215) 867-2399
Fax: (267) 685-0676
*medelson@edelson-law.com*

*\*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (San Jose Division)

| | |
|---|---|
| BRIANNA WEATHERILL individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVEHOURS, INC. D/B/A EARNIN<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR:**<br><br>**1. NEGLIGENCE;**<br>**2. BREACH OF CONTRACT;**<br>**3. BREACH OF IMPLIED CONTRACT; and**<br>**4. UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

///

///

///

///

///

**CLASS ACTION COMPLAINT**

Plaintiff Brianna Weatherill ("Plaintiff") brings this Class Action Complaint ("Complaint"), on behalf of herself and all others similarly situated, against Defendant Activehours, Inc. d/b/a EarnIn ("EarnIn" or "Defendant") for failure to properly secure and safeguard Plaintiff's and Class Members' (defined below) personally identifiable information stored within Defendant's information network and alleging as follows, based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to them, which is based on personal knowledge:

**NATURE OF THE ACTION**

1.     This class action arises out of Defendant EarnIn's failure to properly secure, safeguard, encrypt, and/or timely and adequately destroy Plaintiff's and Class Members' sensitive personal identifiable information that it had acquired and stored for its business purposes.

2.     Defendant represents itself as a "financial technology company that serves individuals and businesses, offering a suite of financial products including Earned Wage Access" [1] to consumers, including Plaintiff and Class Members.

3.     A data breach occurred in EarnIn's network starting on or about April 16, 2025, and continuing through October 15, 2025, which was subsequently disclosed on or about November 12, 2025 (the "Data Breach").[2]

4.     Failures in Defendant's data security resulted in the Data Breach, in which cybercriminals were able to target Defendant's computer systems and exfiltrate Plaintiff's and Class Members' highly sensitive and personally identifiable information ("PII") (collectively, the "Private Information"). As a result of this Data Breach, Plaintiff's and Class Members' Private Information  remain in the hands of those cybercriminals. The Data Breach Notice states that confidential, proprietary, and personal information, including customers names, addresses, dates of birth, and Social Security Numbers, was obtained from the databases that Defendant uses to

---

[1] *See* https://www.earnin.com/about (last visited November 24, 2025).
[2] *See* Data Breach Notice, attached as Exhibit "A."

store customer information and data.[3]

5.      Upon information and belief, the Defendant learned of the Data Breach on or about October 14, 2025, and simultaneously determined that the Data Breach involved the Private Information of Plaintiff and Class Members, however, Defendant did not begin sending notices to the victims of the Data Breach until November 12, 2025.

6.      The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Plaintiff's and Class Members' Private Information with which it was entrusted for either treatment and/or employment purposes.

7.      Plaintiff brings this class action lawsuit on behalf of herself and all other similarly situated persons to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party, and failing to include in that belated and inadequate notice, precisely what specific types of information were accessed and taken by cybercriminals.

8.      Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the Data Breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that network in a dangerous condition.

9.      Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiff's and Class Members' Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members with prompt and

---

[3] *See* Data Breach Notice, attached as Exhibit "A."

**CLASS ACTION COMPLAINT FOR DAMAGES**

full notice of the Data Breach.

10.     In addition, Defendant failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant properly monitored its computer network and systems, it would have discovered the massive intrusion sooner rather than allowing cybercriminals unimpeded access to Plaintiff's and Class Members' Private Information.

11.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

12.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including: opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

13.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now, and for years into the future, closely monitor their financial accounts to guard against identity theft.

14.     Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

15.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all other similarly situated individuals whose Private Information was accessed during the Data Breach.

16.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, as well as long-term and adequate credit monitoring funded by Defendant, and declaratory relief.

**4**

**CLASS ACTION COMPLAINT FOR DAMAGES**

## PARTIES

17.    Plaintiff Brianna Weatherill, is and at all times mentioned herein an individual citizen of Washington. On November 12, 2025, Plaintiff Weatherill received notice of the Data Breach. Plaintiff was alerted that her Private Information was part of the Data Breach and it is now exposed to cybercriminals.[4]

18.    Like Plaintiff, other potential Class Members received similar notices informing them that their Private Information was exposed in the Data Breach on or about November 12, 2025.

19.    Defendant Activehours, Inc. d/b/a EarnIn is a Delaware corporation registered to conduct business in California with a principal place of business located 391 San Antonio Road., 3rd Fl., Mountainview, California 94040.

20.    According to its website, Defendant is "reimagining the way money moves to make financial momentum accessible to everyone."[5]

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this Class action exceeds $5,000,000, exclusive of interest and costs, and upon information and believe there are numerous impacted Class members (over 100) who are citizens of states other than Defendant's state of citizenship.

22.    This Court has personal jurisdiction over the parties in this case. Defendant EarnIn conducts business in this District and is a citizen of this District by virtue of having its principal place of business located in this District.

23.    Venue is proper in this Court under 28 U.S.C. §1391(b) because EarnIn maintains its headquarters in this District and regularly conducts business in this District.

///

///

///

---

[4] *See* n. 2, supra.
[5] *See* https://www.linkedin.com/company/earnin/ (last visited November 24, 2025).

**CLASS ACTION COMPLAINT FOR DAMAGES**

1

**FACTUAL ALLEGATIONS**

2

*Defendant's Business*

3      24.    Defendant EarnIn "exist[s] to help our members achieve greater financial

4    confidence and independence."[6]

5      25.    In the ordinary course of business and as a condition to participating/utilizing

6    Defendant's services, EarnIn requires participants to provide (and Plaintiff did provide) certain

7    Private Information including their name, address, birthdate, social security number, and credit

8    card or banking information, which is stored on Defendant's systems.

9      26.    Upon information and belief, Defendant's Privacy Policy[7] makes clear that it

10   understands that its customers' Private Information is personal and must be protected by law.

11   Defendant represents that "EarnIn is subject to the same federal, state, and foreign privacy laws

12   (as applicable) that banks located in the United States."[8] Further, that consumers' Private

13   Information "is protected by physical, electronic, and procedural safeguards in compliance with

14   applicable US federal and state laws and regulations. We also use computer safeguards such as

15   firewalls and data encryption and We enforce physical access controls to Our offices and files."[9]

16      27.    Defendant agreed to and undertook legal duties to maintain the Private Information

17   Plaintiff and Class Members entrusted to it, and in compliance with all applicable laws, including

18   the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

19      28.    Yet, through its failure to properly secure Plaintiff's and Class Members' Private

20   Information, Defendant failed to meet its own promises of customer privacy.

21      29.    The customer information held by Defendant in its computer system and network

22   included Plaintiff's and Class Members' highly sensitive Private Information.

23   *The Data Breach*

24      30.    A data breach occurs when cyber criminals intend to access and steal Private

25   Information that has not been adequately secured by a business entity like the Defendant.

26

---

27   [6] *See* https://www.earnin.com/about (last visited November 24, 2025).
     [7] https://www.earnin.com/privacy/full-privacy (last visited November 24, 2025).

28   [8] *Id.*
     [9] *Id.*

**CLASS ACTION COMPLAINT FOR DAMAGES**

31.     According to the Data Breach Notice, "we discovered that, from April 2025, through October 15, 2025, our [Defendant's] system sent encrypted personal information of Lead Bank customers to another one of our partner banks."[10]

32.     Presently, however, Defendant has provided no public information on the ransom demand or payment.

33.     On or about November 12, 2025, after Defendant learned that Plaintiff's and Class Members' Private Information was attacked by cybercriminals, Defendant's customers began receiving their notices of the Data Breach informing them that its investigation determined that their Private Information was accessed.

34.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

35.     Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

36.     Defendant had obligations created by the FTCA, contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep their Private Information confidential, and to protect it from unauthorized access and disclosure.

37.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice***

38.     It is well known that PII and protected health information ("PHI"), including Social Security numbers in particular, is a valuable commodity and a frequent, intentional target of cyber criminals. Companies that collect such information, including Defendant, are well-aware of the risk of being targeted by cybercriminals.

39.     Data Breaches are preventable. Multiple agencies, including the FBI, U.S. Secret Service, U.S. Government Accountability Office, Federal Trade Commission, Social Security Administration, to name a few, have been warning businesses for years to take proactive measures

---

[10] *See* n. 2, *supra*.

**CLASS ACTION COMPLAINT FOR DAMAGES**

to harden their information networks against hacking. Companies such as Defendant have long been on notice that they are high risk targets and should have taken proactive measures to enhance its data security. Defendant here should have utilized recommended security techniques such as regular backups, robust endpoint security, employee training on phishing awareness and implemented a zero-trust security mode to keep its information network secure.

40.    Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting its equipment and computer files containing Private Information.

41.    As a result of Defendant's inadequate training and supervision of its IT and data security agents and employees, its failure to implement reasonable security measures and the breach of its legal duties and obligations, the aforementioned Data Breach occurred, and Plaintiff's and Class Members' Private Information was accessed and "stolen" by an unspecified "bad actor." Defendant permitted Plaintiffs' and Class Members' Private Information to be held in unencrypted form despite the heightened sensitivity of such Private Information.

42.    Individuals place a high value on the privacy of their Private Information. Identity theft causes severe negative consequences to its victims, as well as severe distress and hours of lost time trying to fight against the impact of identity theft.

43.    A data breach increases the risk of becoming a victim of identity theft. Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice, "[a] direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss."[11]

---

[11] "Victims of Identity Theft, 2018," U.S. Department of Justice (April 2021, NCJ 256085) available at: https://bjs.ojp.gov/content/pub/pdf/vit18.pdf (last visited November 24, 2025).

CLASS ACTION COMPLAINT FOR DAMAGES

44. Individuals, like Plaintiff and Class Members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and is likened to accessing one's DNA for hacking purposes.

45. Data Breach victims suffer long-term consequences when their Social Security numbers are taken and used by hackers. Even if they know their Social Security numbers are being misused, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of Social Security number misuse.

46. The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same."[12]

47. Additionally in 2021, there was a 15.1% increase in cyberattacks and data breaches from 2020. Over the next two years, in a poll of security executives, they have predicted an increase in attacks from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable cases will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[13]

48. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, and hopefully can ward off a cyberattack.

49. According to an FBI publication, "[r]ansomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to operations

---

[12] https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited November 24, 2025).
[13] https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year-2022-that-you-need-to-know/?sh=176bb6887864 (last visited November 24, 2025).

**CLASS ACTION COMPLAINT FOR DAMAGES**

and the loss of critical information and data."[14] This publication also explains that "[t]he FBI does not support paying a ransom in response to a ransomware attack. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity."[15]

50.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect Plaintiff's and the proposed Class' Private Information from being compromised.

51.    The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health insurance information, and medical and clinical data, and that information can be easily monetized."[16]

52.    Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully can ward off a potential attack.

53.    According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan, change a billing address so the victim no longer receives bills, open new utilities, obtain a mobile phone, open a bank account and write bad checks, use a debit card number to withdraw funds, obtain a new driver's license or ID, and/or use the victim's information in the event of arrest or court action.[17]

54.    The significant increase in attacks in the healthcare industry, and attendant risk of future attacks, is widely known to the public and to anyone in that industry, including Defendant.

---

[14] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/ransomware (last visited November 24, 2025).
[15] *Id.*
[16] *Id.*
[17] Susan Henson, What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself?, Experian (Sept. 1, 2017), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-withyour-personal-information-and-how-can-you-protect-yourself/.

*Defendant Failed to Comply with FTC Guidelines*

55.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

56.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[18] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[19]

57.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

58.    The FTC has brought enforcement actions against businesses, like that of Defendant, for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[18] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited November 24, 2025).
[19] *Id*.

**CLASS ACTION COMPLAINT FOR DAMAGES**

59.    These FTC enforcement actions include actions against healthcare providers like Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

60.    Defendant failed to properly implement sufficient data security practices.

61.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

62.    Defendant was at all times fully aware of its obligation to protect the Private Information of its customers. Defendant was also aware of the significant repercussions that would result from its failure to do so.

***Defendant Failed to Comply with Industry Standards***

63.    As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

64.    Several best practices have been identified that a minimum should be implemented by healthcare providers like Defendant, including but not limited to: educating all employees; utilizing strong passwords; creating multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; using multi-factor authentication; protecting backup data, and; limiting which employees can access sensitive data.

65.    Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

///

66.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

67.     These frameworks are existing and applicable industry standards in the healthcare industry, yet Defendant failed to comply with these accepted standards, thereby opening the door to and failing to thwart the Data Breach.

***Data Breaches Put Consumers at an Increased Risk Of Fraud and Identify Theft***

68.     Data Breaches such as the one Plaintiff and Class Members experienced cause significant disruption to the overall daily lives of victims affected by the attack.

69.     In 2019, the United States Government Accountability Office released a report addressing the steps consumers can take after a data breach.[20] Its appendix of steps consumers should consider, in extremely simplified terms, continues for five pages. In addition to explaining specific options and how they can help, one column of the chart explains the limitations of the consumers' options. It is clear from the GAO's recommendations that the steps Data Breach victims (like Plaintiff and Class) must take after a breach like Defendant's are both time consuming and of only limited and short-term effectiveness.

70.     The GAO has long recognized that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

71.     The FTC, like the GAO, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their

---

[20] https://www.gao.gov/assets/gao-19-230.pdf (last visited November 24, 2025).

credit reports.[21]

72.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

73.     Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

74.     Theft of Private Information is also gravely serious. PII/PHI is valuable property.[22]

75.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and also between when Private Information and/or financial information is stolen and when it is used. According to GAO:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* 2007 GAO Report, at p. 29.

76.     Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

77.     There is a strong probability that the entirety of the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. This is evidenced by the fraud that has already taken place in Plaintiff Weatherill's case, as discussed in further detail below. Thus, Plaintiff and Class Members must vigilantly monitor their financial and

---

[21] *See* https://www.identitytheft.gov/Steps (last visited November 24, 2025).

[22] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

medical accounts for many years to come.

78.    Furthermore, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[23] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[24] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

79.    Moreover, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[25]

80.    This data, as one would expect, commands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[26]

81.    In recent years, the transportation industries have experienced disproportionally higher numbers of data theft events than other industries. Defendant knew or should have known

---

[23] *Identity Theft and Your Social Security Number*, Social Security Administration (2018) at 1. Available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited November 24, 2025).
[24] *Id.* at 4.
[25] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited November 24, 2025 ).
[26] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html          (last    visited November 24, 2025 ).

**CLASS ACTION COMPLAINT FOR DAMAGES**

this and strengthened its data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

## **PLAINTIFFS EXPERIENCE**

*Plaintiff Brianna Weatherill*

82.    Plaintiff Weatherill received notice that her Private Information was exfiltrated as part of Defendant's Data Breach on November 12, 2025.[27]

83.    The Notice that Plaintiff received does not explain exactly which parts of her Private Information were accessed and taken but instead generically states that the files contained her name, date of birth and Social Security number.

84.    Plaintiff Weatherill is especially alarmed by the vagueness in the Notice regarding her stolen extremely private information, as among the breached data on Defendant's computer system.

85.    Since the Data Breach, Plaintiff Weatherill has tried to mitigate the damage by changing her passwords, contacting the credit bureaus as Defendant instructed, and monitoring her financial accounts for about 2.5 hours per week. This is more time than she spent prior to learning of the Defendant's Data Breach. Having to do this every week not only wastes her time as a result of Defendant's negligence, but it also causes him great anxiety.

86.    Soon after the Data Breach, Plaintiff Weatherill began receiving an excessive number of spam calls on the same cell phone number provided to Defendant on her records. These calls are a distraction, must be deleted, and waste time each day. Given the timing of the Data Breach, she believes that the calls are related to her stolen PII.

87.    Plaintiff Weatherill is aware that cybercriminals often sell Private Information, and once stolen, it is likely to be abused months or even years after Defendant's Data Breach.

88.    Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties and possibly criminals. Plaintiff suffered lost time, annoyance,

---

[27] *See* n. 2, supra.

interference, and inconvenience because of the Data Breach.

89.     Plaintiff has experienced anxiety and increased concerns arising from the fact that her PII has been or will be misused and from the loss of her privacy.

90.     The risk is not hypothetical. Here, a known hacking group intentionally stole the data, misused it, threatened to publish, or has published it on the Dark Web, and the sensitive information, including names and Social Security numbers, is the type that could be used to perpetrate identity theft or fraud.

91.     Plaintiff further suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach. Future identity theft monitoring is reasonable and necessary, and such  will include future costs and expenses.

92.     Plaintiff has a continuing interest in ensuring that her PII which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

93.     Had Plaintiff Weatherill been aware that Defendant's computer systems were not secure, she would not have entrusted Defendant with her Private Information.

### **PLAINTIFF'S AND CLASS MEMBERS' COMMON INJURIES**

94.     To date, Defendant has done absolutely nothing to compensate Plaintiff and Class Members for the damages they sustained in the Data Breach.

95.     Defendant fails to offer any compensation to victims of the Data Breach, who commonly face multiple years of ongoing identity theft, and it entirely fails to provide any compensation for its unauthorized release and disclosure of Plaintiff's and Class Members' Private Information, out of pocket costs, and the time they are required to spend attempting to mitigate their injuries.

96.     Furthermore, Defendant's failure to safeguard Plaintiff's and Class Members' Private Information, places the burden squarely on Plaintiff and the Class, rather than on the Defendant, to investigate and protect themselves from Defendant's tortious acts and omissions

resulting in the Data Breach. Defendant merely sent instructions to Plaintiff and Class Members about actions they can affirmatively take to protect themselves.

97.    Plaintiff and Class Members have been damaged by the compromise and exfiltration, by cyber-criminals, of their Private Information as a result of the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

98.    Plaintiff and Class Members were damaged in because their Private Information is now in the hands of cyber criminals being sold and potentially for sale for years into the future.

99.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, imminent, and substantial risk of harm from fraud and identity theft, especially in light of the actual fraudulent misuse of the Private Information that has already taken place, as alleged herein.

100.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

101.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical treatments billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

102.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

103.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

104.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

**CLASS ACTION COMPLAINT FOR DAMAGES**

105.    Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

    a.   Finding fraudulent charges;

    b.   Canceling and reissuing credit and debit cards;

    c.   Purchasing credit monitoring and identity theft prevention;

    d.   Monitoring their medical records for fraudulent charges and data;

    e.   Addressing their inability to withdraw funds linked to compromised accounts;

    f.   Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    g.   Placing "freezes" and "alerts" with credit reporting agencies;

    h.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    i.   Contacting financial institutions and closing or modifying financial accounts;

    j.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    k.   Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    l.   Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

106.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information as well as health information is not accessible online and that access to such data is password-protected.

107.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information —which contains the most intimate details

1  about a person's life—may be disclosed to the entire world, thereby subjecting them to

2  embarrassment and depriving them of any right to privacy whatsoever.

3       108.  Defendant's delay in identifying and reporting the Data Breach caused additional

4  harm. In a data breach, time is of the essence to reduce the imminent misuse of Private Information.

5  Early notification helps a victim of a Data Breach mitigate their injuries, and in the converse,

6  delayed notification causes more harm and increases the risk of identity theft. Here, Defendant

7  became aware of the possibility that the breach had occurred several months before learning of the

8  existence of the breach and still did not notify the victims until November 12, 2025. Yet Defendant

9  offered no explanation of purpose for the delay. This delay violates notification requirements and

10  increased the injuries to Plaintiff and Class.

11

12  ## CLASS ALLEGATIONS

13       109.  Plaintiff brings all counts, as set forth below, individually and as a Class action,

14  pursuant to the provisions of Fed. R. Civ. P. 23, on behalf of a Class defined as:

15
16  > All persons whose Private Information was compromised as a result
   > of the Data Breach that is the subject of the Notice of Data Breach
   > published by Defendant or about November 12, 2025 (the "Class"
17  > or "Class Members").

18       110.  Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and

19  directors, any entity in which Defendant has a controlling interest, the legal representative, heirs,

20  successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is

21  assigned, and the members of their immediate families.

22       111.  This proposed Class definition is based on the information available to Plaintiff at

23  this time. Plaintiff may modify the Class definition in an amended pleading or when she moves

24  for Class certification, as necessary to account for any newly learned or changed facts as the

25  situation develops and discovery gets underway.

26       112.  <u>Numerosity</u> – Fed. R. Civ. P. 23(a)(1): Plaintiff is informed and believes, and

27  thereon alleges, that there are at minimum, over 1,000 members of the Class described above. The

28  exact size of the Class and the identities of the individual members are identifiable through

EarnIn's records, including but not limited to the files implicated in the Data Breach.

113. <u>Commonality</u> – Fed. R. Civ. P. 23(a)(2): This action involves questions of law and fact common to the Class. Such common questions include, but are not limited to:

    a. Whether EarnIn had a duty to protect Plaintiff's and Class members' PII;

    b. Whether EarnIn was negligent in collecting and storing Plaintiff's and Class members' PII, and breached its duties thereby;

    c. Whether EarnIn violated its own Privacy Practices;

    d. Whether EarnIn entered a contract implied in fact with Plaintiff and the Class;

    e. Whether EarnIn breached that contract by failing to adequately safeguard Plaintiff's and Class members' PII;

    f. Whether EarnIn was unjustly enriched;

    g. Whether Plaintiff and Class members are entitled to damages as a result of EarnIn's wrongful conduct; and

    h. Whether Plaintiff and Class members are entitled to restitution as a result of EarnIn's wrongful conduct.

114. <u>Typicality</u> – Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class all had information stored in EarnIn's system, each having their PII exposed and/or accessed by an unauthorized third party.

115. <u>Adequacy of Representation</u> – Fed. R. Civ. P. 23(a)(3): Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex Class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

116. <u>Injunctive Relief</u> – Fed. R. Civ. P. 23(b)(2): Defendant has acted and/or refused to

act on grounds that apply generally to the Class therefore making injunctive and/or declarative relief appropriate with respect to the Class under 23(b)(2).

117.    <u>Superiority</u> – Fed. R. Civ. P. 23(b)(3): A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for EarnIn. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

118.    EarnIn has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

119.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

  a. Whether EarnIn failed to timely and adequately notify the public of the Data Breach;

  b. Whether EarnIn owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

  c. Whether EarnIn's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

  d. Whether EarnIn's failure to institute adequate protective security measures amounted to negligence;

  e. Whether EarnIn failed to take commercially reasonable steps to safeguard consumers' and employees' PII; and

f. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

120. Finally, all members of the proposed Class are readily ascertainable. EarnIn has access to Class members' names and addresses affected by the Data Breach. Class members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

## COUNT I
### Negligence
### (On Behalf of Plaintiff and Class Members)

121. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

122. Defendant required Plaintiff and Class Members to submit non-public personal information in order to obtain loans and other financial services.

123. By collecting and storing this data in Defendant's computer network and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer network—and Plaintiff's and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

124. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

125. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers, which is recognized by

laws and regulations as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

126. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

127. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

128. Defendant breached its duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failure to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

d. Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

e. Failing to detect in a timely manner that Plaintiff's and Class Members' Private Information had been compromised; and

f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

129. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high

1    frequency of cyberattacks and data breaches in the healthcare industry.

2       130.    It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and

3    Class Members' Private Information would result in one or more types of injuries to Plaintiff and

4    Class Members.

5       131.    Plaintiff and Class Members are entitled to compensatory and consequential

6    damages suffered as a result of the Data Breach.

7       132.    Defendant's negligent conduct is ongoing, in that it still holds the Private

8    Information of Plaintiff and Class Members in an unsafe and unsecure manner.

9       133.    Plaintiff and Class Members are also entitled to injunctive relief requiring

10   Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to

11   future annual audits of those systems and monitoring procedures; and (iii) continue to provide

12   adequate credit monitoring to all Class Members.

13

14                                    **COUNT II**
                                  **Breach of Contract**
15                      **(On Behalf of Plaintiff and Class Members)**

16      134.    Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully

17   set forth herein.

18      135.    Plaintiff and Class Members entered into a valid and enforceable contract through

19   which they paid money to Defendant in exchange for services including promises by Defendant to

20   secure, safeguard, and not disclose Plaintiff's and Class Members' Private Information.

21      136.    Defendant's Privacy Policy memorialized the rights and obligations of Defendant

22   and its customers. This document was provided to Plaintiff and Class Members in a manner in

23   which it became part of the agreement for services.

24      137.    In the Privacy Policy, Defendant commits to protecting the privacy and security of

25   private information and promises to never share Plaintiff's and Class Members' Private

26   Information except under certain limited circumstances.

27      138.    Plaintiff and Class Members fully performed their obligations under their contracts

28   with Defendant.

139.    However, Defendant did not secure, safeguard, and/or keep private Plaintiff's and Class Members' Private Information, and therefore Defendant breached its contracts with Plaintiff and Class Members.

140.    Defendant allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Class Members' Private Information without permission. Therefore, Defendant breached the Privacy Policy with Plaintiff and Class Members.

141.    Defendant's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA and applicable industry standards, resulted in Defendant providing services to Plaintiff and Class Members that were of a diminished value.

142.    As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendant's failure to fully perform its part of the bargain with Plaintiff and Class Members.

143.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

144.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiff and Class Members for a period of ten years.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and Class Members)**

145.    Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

146.    This Count is pleaded in the alternative to Count II above.

147.    Through their course of conduct, Defendant, Plaintiff and Class Members entered into implied contracts where Defendant would be required to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

148.    Defendant solicited, invited and required Plaintiff and Class Members to provide

**CLASS ACTION COMPLAINT FOR DAMAGES**

their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers by, in part, providing their Private Information to Defendant.

149. As a condition of being direct customers and/or employees of Defendant, Plaintiff and Class Members provided and entrusted their Private Information to Defendant. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

150. A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their Private Information to Defendant, in exchange for, amongst other things, the protection of their Private Information.

151. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

152. Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

153. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have suffered and will continue to suffer (i) ongoing, imminent and impending threat of identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (f) other economic and noneconomic harm.

///

///

///

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

154. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

155. This Count is pleaded in the alternative to Count III above.

156. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security

157. Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

158. Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value of the Private Information that was provided.

159. Defendant acquired the Private Information through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

160. If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would have entrusted their Private Information to Defendant.

161. Plaintiff and Class Members have no adequate remedy at law.

162. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their

**28**

Private Information.

163.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

164.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which:(a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

165.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

166.    Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, pray for relief as follows:

1.    For an order certifying this action as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class.

**CLASS ACTION COMPLAINT FOR DAMAGES**

2.  For equitable relief enjoining EarnIn from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

3.  For equitable relief compelling EarnIn to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Personal Information compromised during the Data Breach;

4.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of EarnIn's wrongful conduct;

5.  For an order directing EarnIn to pay for not less than three years of credit monitoring for Plaintiff and the Class Members;

6.  For an order awarding actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

7.  For an order awarding punitive damages, as allowable by law;

8.  For an order awarding reasonable attorneys' fees and costs, and any other expense, including expert witness fees pursuant to Cal. Code of Civil Procedure § 1021.5 and/or other applicable law;

9.  For an order awarding pre- and post-judgment interest on any amounts awarded; and,

10. Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury for all the claims asserted in this Complaint so triable.

Respectfully submitted,

**EMERY | REDDY, PC**

Dated:  November 24, 2025        By: */s/ M. Anderson Berry*
                                     M. Anderson Berry (SBN 262879)
                                     Gregory Haroutunian (SBN 330263)
                                     Brandon P. Jack (SBN 325584)
                                     **Emery | Reddy, PC**
                                     600 Stewart Street, Suite 1100

**30**

Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Marc H. Edelson*
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Phone: (215) 867-2399
Fax: (267) 685-0676
*medelson@edelson-law.com*

* *Pro hac vice forthcoming*

*Attorneys for Plaintiff and the Putative Class*

**CLASS ACTION COMPLAINT FOR DAMAGES**